**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| BRIAN BIRDSONG, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | No. 1:05-cv-283-DFH-TAB |
| ) | |
| ZETTIE COTTON, ) | |
| ) | |
| Respondent. ) | |

**Entry Discussing Petition for Writ of Habeas Corpus**

The petition of Brian Birdsong ("Birdsong") for a writ of habeas corpus is denied and this action is dismissed with prejudice.[1] This disposition is compelled by the following facts and circumstances:

1.  Birdsong is serving the executed portion of a sentence imposed by an Indiana state court following his conviction for a drug offense and for resisting law enforcement. His convictions and the trial court's denial of his petition for post-conviction relief were affirmed on appeal in *Birdsong v. State,* No. 49A04-0305-PC-0254 (Ind.Ct.App. 2004) (unpublished). The circumstances relating to his offense were described as follows:

> On May 11, 1999, Indianapolis Police Detective Steven Fitzpatrick ("Detective Fitzpatrick") obtained a search warrant for the residence and premises of John Jones's house, which was located at 2876 South Tindall Street ("Jones's House"). As the police officers approached the Jones's House to execute the search warrant, Jones and Birdsong were standing in the front yard of the residence and Leslie Smith ("Smith") was standing on the front porch. When Jones turned around to face the officers, Detective Fitzpatrick shouted "police, search warrant . . . get down on the ground." R. at 175-76. Jones and Smith complied with this order, but Birdsong did not. Rather, Birdsong walked around a truck that was parked in the driveway of Jones's House and, then, he "took off running straight west behind the truck." Id. at 176-77. Detective Fitzpatrick pursued Birdsong and repeatedly yelled "get down." *Id.* at 209. Seconds later, Detective Fitzpatrick caught Birdsong

---

[1] Although Birdsong seeks an evidentiary hearing as to aspects of his habeas claims, such a proceeding is only necessary when a more extensive factual record must be compiled to decide an issue. See *Newell v. Hanks*, 283 F.3d 827, 838 (7th Cir. 2002). That is not the case here. Accordingly, his request for an evidentiary hearing is **denied.**

> and physically brought him to the ground. Detective Paul Buchman ("Detective Buchman") then took custody of Birdsong. After Detective Buchman handcuffed Birdsong, he conducted a pat down search for weapons. Detective Buchman then surveyed the scene to make sure it was secure. When Detective Buchman looked back at Birdsong, he noticed that Birdsong's left hand was "stuffed" in his left, back pocket. *Id.* at 211. Detective Buchman next observed Birdsong throw two plastic items onto the ground approximately sixteen inches away from him. One of these plastic items was a bag containing "23.6666 grams" of crack cocaine. *Id.* at 241.
>
> During the execution of the search warrant, a film crew from the television program "COPS" accompanied the police officers to Jones's House. Apparently, the film crew made a videotape of the execution of the search warrant ("Videotape").

*Id.* at pp. 3-4.

2. A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). See *Conner v. McBride,* 375 F.3d 643, 649 (7th Cir. 2004). Review of Birdsong's habeas action is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lambert v. McBride,* 365 F.3d 557, 561 (7th Cir. 2004). Under the AEDPA, if a state court adjudicated a constitutional claim on the merits, a federal court may grant habeas relief only if the state-court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent, or if the state-court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. 28 U.S.C. § 2254(d)(1), (2); *Early v. Packer,* 537 U.S. 3, 7-8 (2003); *Lambert,* 365 F.3d at 561.

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted); see also *Badelle v. Correll,* 452 F.3d 648, 653 (7th Cir. 2006). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes,* 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002)). Factual issues determined by a state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Werts v. Vaughn,* 228 F.3d 178, 196 (3d Cir. 2000) (*citing* 28 U.S.C. § 2254(e)(1)).

3.     Birdsong's claims are that: 1) the State failed to disclose exculpatory evidence to him; 2) the trial court relied upon inaccurate sentencing information and imposed an inappropriate sentence; 3) evidence was illegally seized from him at the time of his arrest; and 4) he was denied the effective assistance of counsel at trial.

4.     The unedited "COPS" videotape was not obtained and preserved by the Indianapolis Police Department. By the time Birdsong's second attorney requested the videotape, it had been destroyed. Birdsong's first claim is that the police department had the ability to obtain a copy of the full unedited videotape and that its failure to do so constituted a failure to preserve materially exculpatory evidence that renders his convictions unfair, unjust, and unreliable. This is the phrasing of the claim in Birdsong's reply to the respondent's return to order to show cause. In the petition itself, however, this claim is described as the State's failure to disclose the videotape (characterized in the habeas petition as "favorable evidence") to Birdsong. This issue was presented to the Indiana courts as a failure to preserve the videotape. This was the proper avenue, because

> [a] claim that the government failed to preserve evidence is not governed by *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963) but, rather, by the more rigorous standard established in *Arizona v. Youngblood,* 488 U.S. 51, 56-58, 109 S. Ct. 333, 102 L.Ed.2d 281 (1988).

*United States v. Stewart,* 388 F.3d 1079, 1085 (7th Cir. 2004); see also *United States v. Femia*, 9 F.3d 990, 993 (1st Cir. 1993)("We apply *Youngblood* to evidence which no longer exists and *Brady* to exculpatory evidence in the government's possession."). In order to succeed with such a claim, a defendant must show: "(1) bad faith on the part of the government; (2) that the exculpatory value of the evidence was apparent before the evidence was destroyed; and (3) that the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Stewart,* 388 F.3d at 1085 (quoting *United States v. Aldaco,* 201 F.3d 979, 982-83 (7th Cir. 2000), and *United States v. Watts,* 29 F.3d 287, 289-90 (7th Cir. 1994)). Evidence lacks apparent exculpatory value when analysis of that evidence would have simply offered an avenue of investigation that might have led any number of directions. *Hubanks v. Frank,* 392 F.3d 926, 931 (7th Cir. 2004).  By contrast, evidence is material to the defendant if it creates a "reasonable probability that, 'had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Scott v. Mullin,* 303 F.3d 1222, 1230 (10th Cir. 2002) (quoting *United States v. Bagley,* 473 U.S. 667, 682 (1985)). "A 'reasonable probability' is a 'probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland v. Washington,* 466 U.S. 668, 694 (1984)).

5.     The "COPS" videotape was, at most, an item which had only potentially exculpatory value. This is evident from the fact that the precise content of the videotape is not known. The Indiana Court of Appeals noted the nature of videotape:

3

> Indeed, Birdsong concedes that he "cannot prove that the [Videotape] would have exonerated him, as is generally required to meet the second (prejudice) prong of the Strickland standard, because the tape no longer exists."

*Birdsong v. State,* No. 49A04-0305-PC-0254, at p. 14 (quoting Birdsong's Appellant's Brief at 21). This finding triggers the *Youngblood* test, which requires a showing of bad faith. In this context, bad faith means a "'conscious effort to suppress exculpatory evidence,'" *United States v. Chaparro-Alcantara,* 226 F.3d 616, 624 (7th Cir. 2000) (quoting *Jones v. McCaughtry,* 965 F.2d 473, 477 (7th Cir. 1992)); thus, a finding of bad faith turns on "the [government's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood,* 488 U.S. at 56 n.\*; *Chaparro-Alcantara,* 226 F.3d at 624. In this case, Birdsong failed to demonstrate that the police had knowledge of the potentially exculpatory value of the videotape. There has been no showing of bad faith on the part of the police in not requesting the full unedited footage of it. Without a showing of bad faith, therefore, Birdsong suffered no violation of his due process rights. *Youngblood*, 488 U.S. at 58 ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.").

      6.     The Indiana Court of Appeals found that there was no evidence to suggest that the police department had requested from the producer of "COPS" the footage, and accordingly, Birdsong failed to demonstrate that the State was in possession of the videotape in violation of his due process rights. *Birdsong v. State,* No. 49A04-0305-PC-0254, at p. 5 ("As such, there is no evidence that the State ever possessed the Videotape at issue."). This is a finding that the State did not act in bad faith for at least the reason that the government's duty to preserve evidence does not "impose a duty to obtain evidence." *Miller v. Vasquez,* 868 F.2d 1116, 1119-20 (9th Cir. 1989). It is, additionally, a finding that there was no misconduct on the part of the police, and hence no showing of bad faith. As noted in *United States v. Hughes,* 211 F.3d 676, 688 (1st Cir. 2000), "[t]he government has no duty to produce evidence outside of its control, and it is not responsible for the preservation of evidence that was never in its control in the first place." (Internal citations omitted). As shown above, this conclusion is not contrary to, nor is it an unreasonable application of, clearly established federal law as determined by the Supreme Court.

      7.     Birdsong's next claim is that the trial court relied upon inaccurate sentencing information and imposed an inappropriate sentence.

      a.     The specifics of this claim are that the presentence report that was considered by the trial court listed two of his convictions twice, making it appear that he had been arrested 12 times and convicted 8 times, when he had actually only been arrested 10 times and convicted 6 times.

      b.     The Indiana Court of Appeals concluded that Birdsong had waived this claim by acknowledging that he had reviewed the presentence report and not alerting the court to any error in the prior criminal history recited in it. *Birdsong v. State,* No. 49A04-0305-PC-0254, at p. 7 ("Accordingly, Birdsong has waived any such error.").

4

  c. The foregoing is a finding of procedural default. *Coleman v. Thompson,* 501 U.S. 722, 729 (1990) (procedural default occurs "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment").

  d. Birdsong does not acknowledge the procedural waiver relating to his claim of sentencing error, and proceeds in any event to argue it as a matter of state law, as if this court exercised appellate review over the imposition of a sentence. Apart from the procedural default, the issue of sentencing within the parameters of state law is ordinarily outside the realm of federal habeas review, *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997), and this case is no exception.

  e. Even if Birdsong's claim had been properly preserved in and fairly presented to the Indiana state courts, Birdsong would not prevail on this claim. After noting the procedural waiver, the Indiana Court of Appeals examined Birdsong's criminal history as he configured it and concluded that "[t]he criminal history proffered by Birdsong alone is sufficient to qualify as an aggravating circumstance." *Birdsong v. State,* No. 49A04-0305-PC-0254, at p. 8. This satisfies Birdsong's due process entitlement to a fair sentencing process. See *U.S. ex. rel. Welch v. Lane*, 738 F.2d 863, 864-65 (7th Cir. 1984)("A convicted offender does not have a constitutional right to a particular sentence available within a range of alternatives, but the offender does have a right to a fair sentencing *process*-one in which the court goes through a rational procedure of selecting a sentence based on relevant considerations and accurate information.").

8. Birdsong also seeks habeas relief based on his claim that evidence was illegally seized from him at the time of his arrest. Birdsong alleges that his "conviction [was] obtained by use of evidence gained pursuant to an unconstitutional search and seizure." This claim was presented to the Indiana state courts only as a specification of attorney ineffectiveness and was rejected in that fashion. As a freestanding claim here, therefore, the claim is not available for consideration. *Lane v. Richards,* 957 F.2d 363, 366 (7th Cir.) (issues were not presented on direct appeal and relief would be barred by procedural default).

9. Birdsong alleges that his trial counsel rendered ineffective assistance. The single specification of error supporting this claim is that Birdsong's attorney was ineffective in failing to obtain a copy of the "COPS" videotape.

  a. To support an ineffective assistance of counsel claim under *Strickland v. Washington,* 466 U.S. 668, 684 (1984), Birdsong must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 695. A failure to establish either prong would result in a denial of Birdsong's claim. See *Rastafari v. Anderson,* 278 F.3d 673, 688 (7th Cir. 2001). The first prong is satisfied by a showing that counsel's performance fell below the "objective standard of reasonableness" guaranteed under the Sixth Amendment. *Barker v. United States,* 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688). In evaluating whether counsel's performance was deficient, "the court must defer to counsel's

5

tactical decisions," avoid "the distorting effects of hindsight" and give counsel the benefit of a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689. The prejudice prong of *Strickland* requires petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

b.   A federal habeas court does not apply the principles of *Strickland* directly, but instead analyzes whether the state courts reasonably applied federal law in concluding that Birdsong's counsel was not ineffective. See *Conner v. McBride,* 375 F.3d 643, 657 (7th Cir. 2004). "*Strickland* calls for inquiry into degrees," thereby "add[ing] a layer of respect for a state court's application of the legal standard." *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001). Accordingly, this court is required to deny the writ relative to this claim, at least, as long as the Indiana Court of Appeals "*t[ook] the [constitutional standard] seriously and produce[d] an answer within the range of defensible positions.*" *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000) (emphasis added).

c.   The Indiana Court of Appeals recognized the controlling *Strickland* standard, *Birdsong v. State,* No. 49A04-0305-PC-0254, at p. 10, and noted Birdsong's admission that he could not prove that the videotape would have exonerated him, because the tape no longer exists. *Id.* at p. 14. Birdsong's argument in his appeal that the delay in requesting the videotape "forever foreclosed the ability to determine whether the footage would have shown . . . that he had not thrown the cocaine" was properly assessed by the Indiana Court of Appeals as "amount[ing] to mere speculation." *Birdsong v. State,* No. 49A04-0305-PC-0254, at p. 14. The prejudice prong of *Strickland* cannot be satisfied through mere speculation. *United States v. Farr,* 297 F.3d 651, 658 (7th Cir. 2002) (citing *United States v. Boyles,* 57 F.3d 535, 550 (7th Cir. 1995), and Birdsong was left with nothing more. *California v. Trombetta,* 467 U.S. 479, 486 (1984)("Whenever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed.").

d.   It is fully evident that the Indiana Court of Appeals "took the constitutional standard seriously and produced an answer within the range of defensible positions." Because this court cannot find that the Indiana Court of Appeals "unreasonably applie[d] [the *Strickland* standard] to the facts of the case," this court is without authority to grant Birdsong's petition for habeas relief as to his claim of ineffective assistance of counsel. *Murrell v. Frank,* 332 F.3d 1102, 1111 (7th Cir. 2003)(citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).[2]

---

[2] Birdsong's habeas petition does not renew the claim presented in his appeal that he was denied the effective assistance of counsel based on his attorney's failure to challenge the search of Jones' house or to seek suppression of the cocaine seized in the course of the search. His reply to the respondent's return to order to show cause does, however, contain an argument on this

10. This court has carefully reviewed the state-court record in light of Birdsong's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. "A defendant whose position depends on anything other than a straightforward application of established rules cannot obtain a writ of habeas corpus." *Liegakos v. Cooke,* 106 F.3d 1381, 1388 (7th Cir. 1997). No such established

---

point. Although in some circumstances this discrepancy might result in an unintended forfeiture of the claim omitted from the habeas petition or further development of a response to the argument, this is not such a case. The Indiana Court of Appeals decision provides ample grounds on which to assess this specification.

The Indiana Court of Appeals first noted that the cocaine was not seized until after Birdsong had thrown it down, meaning that it was abandoned property at that point. *Birdsong v. State,* No. 49A04-0305-PC-0254, at p. 11. This is a correct statement and based on the facts which were established. "If a person has voluntarily abandoned property, he has no standing to complain of its search or seizure." *United States v. Jackson,* 544 F.2d 407, 409 (9th Cir. 1976)(citing *Abel v. United States,* 362 U.S. 217, 240-41 (1960)). Whether a person intends to abandon property may be inferred from words spoken, acts done and other objective facts, and all relevant circumstances at the time of the alleged abandonment should be considered. *United States v. Hoey,* 983 F.2d 890, 892 (8th Cir. 1993). "Whether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent." *United States v. Tugwell,* 125 F.3d 600, 602 (8th Cir. 1997). The police could only conclude from Birdsong's actions that he had abandoned the material he threw to the ground. The evidence of his abandonment was unmistakable.

The Indiana Court of Appeals proceeded to determine whether the abandonment was caused by improper police conduct, which in turn caused it to determine whether the stop of Birdsong was proper. This merits only brief analysis, however, because the existence of probable cause for Birdsong's arrest was obvious. "[R]egardless of whether the police officers had a right to order Birdsong to the ground initially, once Birdsong resisted their orders, the officers had a right to arrest him. . . . The record reveals that after Birdsong attempted to flee, the officers grabbed him and eventually forced him to the ground and placed handcuffs on him. After he was handcuffed, Birdsong threw the baggie onto the ground . . . ." *Birdsong v. State,* No. 49A04-0305-PC-0254, at p. 13. Because Birdsong was resisting the police officers' directions prior to being handcuffed, and because police may arrest a person without a warrant if they have probable cause to believe that the person has committed or was committing a crime, *Gerstein v. Pugh,* 420 U.S. 103 (1975), there was probable cause for Birdsong's arrest. See, e.g., *United States v. Douglas,* 2006 WL 1995019, *3 (E.D.Mo. July 14, 2006)("The officers saw defendant flee, throw down a bag of narcotics, and continue to flee. Clearly they had probably cause for a warrantless arrest."). Although it has been held that abandonment of property is not voluntary where police conduct "was so coercive that a reasonable person would believe that he had no choice but to act as he did, *i.e.* to abandon the property," *United States v. Perkins,* 871 F.Supp. 801, 803-04 (M.D.Pa. 1995), *aff'd,* 91 F.3d 127 (3rd Cir. 1996)(Table), those circumstances were not present during the police seizure of the cocaine thrown down by Birdsong. Under these circumstances, the Indiana Supreme Court reasonably concluded that "Birdsong's trial counsel did not render deficient performance by failing to seek suppression of the cocaine evidence." *Birdsong v. State,* No. 49A04-0305-PC-0254, at p. 13. The foregoing shows that a challenge to the admission of the cocaine evidence would not have been successful, and "[i]t is not deficient performance to fail to raise an argument with no real chance of success." *Hough v. Anderson,* 272 F.3d 878, 898 n.8 (7th Cir. 2001). The decision on this point by the Indiana Court of Appeals was neither contrary to, nor did it involve an unreasonable application of, Supreme Court precedent, nor was that decision based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.

7

rules entitle Birdsong to relief in this case. Accordingly, his petition for a writ of habeas corpus must be **denied** and this cause of action **dismissed with prejudice.** Judgment consistent with this Entry shall now issue.

    So ordered.

                                                                    DAVID F. HAMILTON, Chief Judge
                                                                    United States District Court

Date:   1/20/2009